# EXHIBIT 4

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GOOGLE LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**SERPAPI, LLC,**<br><br>Defendant. | CASE NO. 4:25-cv-10826-YGR<br><br>**ORDER**<br>**GRANTING MOTION TO DISMISS;**<br><br>**DENYING MOTION TO STAY DISCOVERY AS MOOT;**<br><br>**DENYING REQUEST TO STAY OBLIGATION TO RESPOND TO DISCOVERY REQUESTS AS MOOT; AND**<br><br>**DENYING REQUEST TO COMPEL RESPONSES TO DISCOVERY REQUESTS**<br><br>Re: Dkt. Nos. 22, 27, 30, 39 |

Pending before the Court is defendant SerpApi LLC's motion to dismiss all claims in the complaint, Dkt. No. 22, and its motion to stay discovery pending the resolution of its motion to dismiss, Dkt. No. 27. Both motions are opposed. Dkt. Nos. 31, 33. Also pending are two joint discovery letter briefs in which SerpApi requests a stay of its obligation to respond to plaintiff Google LLC's first set of discovery requests pending the resolution of its motion to stay, and Google requests an order compelling SerpApi to respond to those discovery requests within ten days. *See* Dkt. Nos. 30, 39.

For the reasons below, the Court **GRANTS** the motion to dismiss, **WITH LEAVE TO AMEND**; **DENIES AS MOOT** SerpApi's motion to stay discovery pending the resolution of its motion to dismiss; **DENIES AS MOOT** SerpApi's request to stay its obligation to respond to Google's first set

United States District Court<br>Northern District of California

of discovery requests pending the resolution of its motion to stay; and **DENIES** Google's request for an order compelling SerpApi to respond to those discovery requests within ten days.[1]

<div align="center">MOTION TO DISMISS</div>

## I.      Background

For the purpose of resolving the present motion to dismiss, the Court accepts as true the allegations in the complaint, Dkt. No. 1 ("Compl."), which provides:

Plaintiff Google operates Google Search, which is a search engine service accessible on google.com that locates websites and other information on the Internet relevant to given queries, organizes the information, and presents it as "Google Search results." *Id.* ¶¶ 7, 13. Google Search results "often" include a "Knowledge Panel" at the top of the page that displays information derived from Google's "Knowledge Graph," which is a database containing a compilation of information derived from both "licensed and open sources." *Id.* ¶¶ 14-15. Some of the information displayed in the Knowledge Panel is sometimes copyrighted and licensed by Google from third parties. *See id.* ¶ 16 (example of a Knowledge Panel wherein only one of several images displayed in the Panel was copyrighted). Google alleges, in passing, that other "search-related services" it runs also feature copyrighted content, such as Google Shopping and Google Maps. *Id.* ¶ 17. However, Google does not allege that those other services are a part of Google Search or Google Search results. *See generally* Compl.

Defendant SerpApi's business model allegedly is based on appropriating, without authorization, the output of other services, such as Google Search, by using automated means to scrape their content and then offering the content to third parties for a fee. *Id.* ¶ 19. SerpApi offers its customers paid subscriptions to "Google Search API," a software service that it advertises as a method to access and scrape Google Search results (hereinafter, "SerpApi's service"). *Id.* ¶¶ 8, 21. The automated search queries that SerpApi generates to scrape Google Search results impose a deadweight loss on Google, because Google does not generate revenue from those queries and thus cannot offset the costs of processing them. *See id.* ¶ 26. Accordingly,

---

[1] The Court finds, in its discretion, that the motions and discovery-related requests are appropriate for resolution without oral argument. *See* Civil L.R. 7-1(b).

Google prohibits automated access to, and scraping of, Google Search results in its Terms of Service Agreement. *See id.*

In January 2025, Google developed and launched a technological protection measure called SearchGuard to prevent unauthorized third parties from automatically accessing and scraping Google Search results. *Id.* ¶ 27. SearchGuard works by sending a JavaScript "challenge" to search queries that Google receives from unrecognized sources to confirm that they come from real users as opposed to automated software. *Id.* ¶ 29. Google's computer system transmits JavaScript code that calls upon the user's browser to send Google a "solve" for the challenge, i.e., to send Google specific information regarding the browser and user generating the request. *Id.* ¶ 29. For human users, the "solve" is relatively straightforward; their browsers run the JavaScript code and send back the required information seamlessly, without disrupting the user experience. *Id.* ¶ 29. However, automated systems that submit automated queries at a massive scale typically cannot solve the SearchGuard challenge. *Id.* As a result, SearchGuard denies them access to Google's Search results. *Id.*

When SearchGuard launched in January 2025, it effectively blocked SerpApi's service from accessing and scraping Google Search results. *Id.* ¶ 30. However, SerpApi quickly developed methods to circumvent SearchGuard, which involve masking its automated queries to make them appear as if they are being generated by human users, and solving SearchGuard's JavaScript "challenge" with a legitimate request and then syndicating the resulting authorization to other unauthorized browsers that have not solved the challenge to make them appear to Google as authorized users. *See id.* ¶¶ 8, 23, 30−32.

Google alleges that SerpApi's circumvention of SearchGuard causes it harm: (1) through the direct imposition of costs to respond to SerpApi's billions of automated queries; (2) by undermining Google's investment in the copyrighted content it has licensed; (3) by threatening to disrupt Google's relationship with content licensors; and (4) by forcing Google to incur substantial costs to develop and enhance technological measures to protect against SerpApi's unauthorized scraping of licensed copyrighted content. *Id.* ¶ 40.

Google asserts two claims against SerpApi under the Digital Millenium Copyright Act

("DMCA"): (1) a claim for violations of 17 U.S.C. § 1201(a)(1)(A) based on SerpApi's alleged circumvention of SearchGuard to gain unauthorized access to Google Search results; and (2) a claim for violations of 17 U.S.C. § 1201(a)(2) based on SerpApi's manufacturing or providing of a service whose purpose is the circumvention of SearchGuard to gain unauthorized access to Google Search results.[2] Google seeks injunctive relief and damages, among other remedies.

Google filed this action on December 19, 2025. Dkt. No. 1. SerpApi filed the present motion to dismiss on February 20, 2026; Google filed its opposition on April 6, 2026; and SerpApi filed its reply on May 6, 2026. Dkt. Nos. 22, 31, 37.

On March 23, 2026, SerpApi filed a motion to stay discovery pending the resolution of its motion to dismiss. Dkt. No. 27. On the same date, the Court issued an order vacating the case management conference that had been scheduled for March 30, 2026, on the ground that a case management conference was premature in light of the filing of SerpApi's motion to dismiss. Dkt. No. 28. The Court noted that it would reset the case management conference at a later date, if appropriate. *See id.*

Thereafter, SerpApi filed a joint letter brief in which it requests an order staying its obligation to respond to Google's first set of discovery requests until the Court rules on its motion to stay discovery, Dkt. No. 30, and Google filed a second joint letter brief in which it requests an order compelling SerpApi to respond to its first set of discovery requests within ten days, Dkt. No. 39.

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not contain detailed factual

---

[2] Because Google's claims under the DMCA are premised on the alleged circumvention of SearchGuard to gain unauthorized access to Google Search results, and because Google does not allege that the other "search-related services" it mentions in the complaint (i.e., Google Maps and Google Shopping) are a part of Google Search or Google Search results, those other "search-related services" appear to be irrelevant to Google's claims under the DMCA. The Court notes that, even if these "search-related services" were a part of Google Search or Google Search results, the Court's conclusions and reasoning with respect to the viability of Google's claims under the DMCA, as set forth in below, would be the same.

allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. Analysis

As noted, Google asserts two claims under the DMCA. The first claim arises under 17 U.S.C. § 1201(a)(1)(A), which provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." *See* 17 U.S.C. § 1201(a)(1)(A). The second claim arises out of 17 U.S.C. § 1201(a)(2), which provides that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title." *See* 17 U.S.C. § 1201(a)(2).

SerpApi moves to dismiss both of Google's claims under the DMCA on the grounds that (1) Google lacks statutory standing to sue under the DMCA because it does not allege to be an owner or exclusive licensee of copyrighted content; and (2) the allegations in the complaint are insufficient to state a claim for violations of 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2).

### A.     Standing Under the DMCA

SerpApi argues that Google lacks standing to sue under the DMCA because its claims do not fall within the DMCA's "zone of interests" under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–32 (2014) ("*Lexmark*").   *See* Dkt. No. 37 at 6.  SerpApi contends that the DMCA's "zone of interests" covers only people or entities who are the owners or exclusive licensees of copyrighted content, but Google does not allege that it is the owner or exclusive licensee of the copyrighted content that is sometimes displayed in Google Search results.  *See id.*

In *Lexmark*, the Supreme Court held that the determination of whether a person has a right to sue under a particular statute requires courts to presume that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" 572 U.S. at 129 (citation omitted).  "Whether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127 (citations and internal quotation marks omitted).

The Ninth Circuit has not defined the set of plaintiffs who fall within the DMCA's zone of interests.[3]  District courts considering the issue have reached inconsistent conclusions.  Some have held that the DMCA's zone of interests is limited to people or entities that have an ownership interest in the copyrighted material protected by a technological measure.  *See, e.g.*, *Squires v. Lancaster Cnty. Prison*, No. 25-CV-5490, 2025 WL 3298948, *3 (E.D. Pa. 2025) (holding that the DMCA's zone of interests includes copyright owners and "does not include a party who alleges injury but who has no legal interest whatsoever in any of the material").  Others have held that the DMCA's zone of interests includes copyright owners as well as those who own or have a legal interest in a technological measure that controls access to copyrighted material.  *See, e.g.*,

---

[3] Defendant cites portions of *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 944–946 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011) ("*Blizzard*"), for the proposition that standing under the DMCA is limited to copyright owners.  *See* Dkt. No. 22 at 13. However, in that case, which pre-dates *Lexmark*, the Ninth Circuit did not address the issue of statutory standing under the DMCA.

*VidAngel LLC v. ClearPlay, Inc.*, 703 F. Supp. 3d 1329, 1335 (D. Utah 2023) (holding that "the zone of interests of Section 1201 includes copyright owners and owners of an access control measure but does not extend to those who merely allege competitive disadvantage flowing from the alleged violation of copyrights or circumvention of access control measures in which they have no legal interest").

Because there is no binding authority on this issue, the Court will conduct its own analysis under *Lexmark* to determine whether the DMCA's zone of interests is limited to owners and exclusive licensees of copyrighted material, as SerpApi argues. The Court finds that the language of the DMCA, as well as its legislative history, indicate that the statute's zone of interests covers people or entities who suffered an injury arising out of a violation of the DMCA, including those who may not be owners or exclusive licensees of copyrighted material. The plain language of the DMCA supports that interpretation. It provides that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." *See* 17 U.S.C. § 1203(a). That broad language indicates that the set of people or entities who can sue under the statute is defined by whether they suffered an injury arising out of a violation of the DMCA, and not by whether they are owners or exclusive licensees of copyrighted material. *See Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. 2025) (Orrick, J.) ("Recovery [under the DMCA] is not explicitly limited to the copyright holder, because under the express language of the statute '[a]ny person' that is injured by the conduct may bring an action for this violation."). That interpretation is consistent with the DMCA's legislative history, which provides that standing to bring a claim under the DMCA depends on whether a person has suffered an injury arising out of a violation of the DMCA. *See* H.R. Rep. No. 105–551(I), at 22 (1998) (noting that 17 U.S.C. § 1203 "limits standing to bring a civil action to those persons injured by a violation of section 1201 or 1202"). Other portions of the DMCA's legislative history also support the view that standing to sue under the DMCA is not limited to owners and exclusive licensees of copyrighted content. They provide that the purpose of the DMCA's anti-circumvention provisions is to enforce the use of technological protection measures by "private parties," without defining "private parties" as owners and exclusive licensees of

United States District Court
Northern District of California

copyrighted material. *See, e.g.*, S. Rep. No. 105−190, at 11 (1998) (providing that the DMCA's anti-circumvention provisions "encourage[] technological solutions, in general, by enforcing *private parties' use* of technological protection measures with legal sanctions for circumvention") (emphasis added).[4]  Accordingly, the Court finds that the DMCA's zone of interests is not limited to owners and exclusive licensees of copyrighted material, as SerpApi contends.

SerpApi argues that the DMCA's zone of interests cannot be defined based on the broad language in 17 U.S.C. § 1203(a) providing that "any person injured by a violation of" the DMCA can sue under the statute.  As support, SerpApi points to *Lexmark*, arguing that the Supreme Court in that case defined the zone of interests for the Lanham Act narrowly to cover only those who "allege an injury to a commercial interest in reputation or sales" even though the Act contained broad language similar to that in 17 U.S.C. § 1203(a), which authorized suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising.  *See Lexmark*, 572 U.S. at 129−31 (quoting 15 U.S.C. § 1125(a)(1)).  This argument does not persuade.  In *Lexmark*, the Supreme Court defined the zone of interests for the Lanham Act more narrowly than what the statutory language suggested because the Act's stated purposes supported that narrower interpretation.  *See id.*  Here, by contrast, the legislative history of the DMCA discussed above supports defining the zone of interests in a manner consistent with its broad statutory language.

SerpApi also argues that certain portions of the DMCA's legislative history indicate that only copyright owners have standing to sue under the DMCA.  *See, e.g.*, H.R. Rep. No. 105-551(I), at 17 (1998) (providing that "the act of circumventing a technological protection put in place by a copyright owner to control access to a copyrighted work is the electronic equivalent of breaking into a locked room in order to obtain a copy of a book"); S. Rep. No. 105-190, at 15 (1998) ("The purpose of the Committee in proposing enactment of section 1201 is to improve the ability of copyright owners to prevent the theft of their works, including by applying technological protection measures.").  However, the Court cannot conclude that standing under the DMCA is

---

[4] Google cited this portion of the DMCA's legislative history in its opposition, but SerpApi did not acknowledge it in its reply.  *See generally* Dkt. No. 37.

limited to copyright owners based on these portions of the statute's legislative history because the plain language of the DMCA and other portions of the DMCA's legislative history discussed above indicate that standing under that statute is not so limited.

Because the DMCA's zone of interests is not limited to owners and exclusive licensees of copyrighted material, Google's claims under the DMCA are not subject to dismissal on the ground that Google does not allege that it is an owner or exclusive licensee of copyrighted material.

However, for the reasons discussed below, Google has not alleged a plausible violation of the DMCA and, therefore, the Court cannot reasonably infer that any injuries that Google allegedly suffered as a result of SerpApi's conduct arise out of a violation of the DMCA. That precludes Google from bringing a civil action for violations of the DMCA. *See* 17 U.S.C. § 1203(a) (providing that "[a]ny person injured *by a violation of section 1201 or 1202* may bring a civil action in an appropriate United States district court for such violation.") (emphasis added).

**B.** **Whether Google's Allegations State a Claim for Violations of 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2)**

SerpApi argues that Google fails to state a claim for violations of 17 U.S.C. § 1201, subsections (a)(1)(A) and (a)(2) because (1) SearchGuard does not "effectively control access" to a work protected under the Copyright Act; and (2) Google does not allege facts that raise the inference that SerpApi's service circumvented SearchGuard. Additionally, for subsection (a)(2), Google does not allege facts indicating that SerpApi "sells" technology that others can use to circumvent SearchGuard.

**1.** **"Effectively controls access" to a protected work**

To state a claim under either subsection, a plaintiff must allege, among other things, that a technological measure "effectively controls access to a work protected under this title[.]" *See* 17 U.S.C. § 1201(a)(1)(A); 17 U.S.C. § 1201(a)(2). A protected work under Title 17 is one that is protected under the Copyright Act. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011) ("*Blizzard*"). A technological measure "effectively controls access" to a protected work if the measure, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the

9

authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

SerpApi argues that SearchGuard does not "effectively control access" to a work protected under the Copyright Act because: (1) SearchGuard's purpose and effect is to regulate access to Google Search results, which are a compilation of publicly available information, not to control access to copyrighted content; (2) Google does not allege that it implemented SearchGuard "with the authority of the copyright owner"; and (3) the copyrighted content in the Knowledge Panel can be accessed outside of google.com without going through SearchGuard. The Court addresses these arguments in turn.

### a.      Work protected under the Copyright Act

A plaintiff asserting a claim under 17 U.S.C. § 1201(a)(1)(A) or 17 U.S.C. § 1201(a)(2) must allege facts indicating that a technological measure effectively controls access to a work "protected under the Copyright Act." *See CDK Global, LLC v. Tekion Corp.*, No. 25-CV-01394-JSC, 2025 WL 1939951, at *8 (N.D. Cal. July 15, 2025) (Corley, J.) (holding that, to state a claim under 17 U.S.C. § 1201(a), a plaintiff must allege, in relevant part, that the work protected by a technological measure "was protected under the Copyright Act") (citations omitted). If the technological measure controls access to a work that is not protected under the Copyright Act, a claim under 17 U.S.C. § 1201(a)(1)(A) or 17 U.S.C. § 1201(a)(2) fails as a matter of law because the DMCA does not protect works that are not copyrighted. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 550 (6th Cir. 2004) ("*Lexmark International*"), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ("To the extent the Toner Loading Program is not a 'work protected under [the copyright statute]' . . . the DMCA necessarily would not protect it.").

SerpApi contends that Google's claims under the DMCA are subject to dismissal because SearchGuard is designed and functions to control access to and prevent the scraping of Google Search results regardless of whether they contain a copyrighted component, and because SearchGuard is not reasonably tailored to control access only with respect to any copyrighted component that may be included in Google Search results.

The Court agrees with SerpApi in part. To the extent that Google Search results do not contain any copyrighted content, SearchGuard cannot be said to effectively control access to a

<div align="center">10</div>

work protected under the Copyright Act.  Here, Google alleges that SearchGuard controls access to Google Search results, which are compilations of publicly-available information that Google obtains from the internet and organizes for presentation to users on google.com based on relevance.  *See* Compl. ¶¶ 13, 14, 27.  SearchGuard controls access to Google Search results because its "purpose" is "to prevent unauthorized third parties from automatically accessing Google's Search results" to scrape them, as such scraping activities impose a "deadweight loss" on Google.  *See id.* ¶¶ 24, 26-27, 29.  However, Google does not allege that google.com or the Google Search results displayed therein are protected under the Copyright Act.  Importantly, Google alleges that Google Search results are *"often"* accompanied by a "Knowledge Panel" that *may* contain some copyrighted content that Google licenses from third parties, such as copyrighted images. Google does not allege that the "Knowledge Panel" is *always* included in Google Search results, or that the Knowledge Panel, if included in the Search results, *always* contains copyrighted content.  *See id.* ¶¶ 14-16.  Accordingly, Google's allegations indicate a mix of content, some with copyrighted material and others without.

Thus, because the DMCA does not apply where the work controlled by a technological measure is not protected under the Copyright Act, Google's claims under 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2) are subject to dismissal as a matter of law to the extent that they are premised on instances where SearchGuard controls access to Google Search results that do not contain any copyrighted content.  *See CDK Global*, 2025 WL 1939951, at *8; *Lexmark International*, 387 F.3d at 550.  The Court, therefore, **GRANTS** SerpApi's motion to dismiss with respect to this portion of the claims.  The dismissal is **WITHOUT LEAVE TO AMEND** because amendment would be futile, as the claims fail as a matter of law.

With respect to instances where Google Search results *do* contain a copyrighted component in the Knowledge Panel, SerpApi argues that SearchGuard is not an effective copyright control measure because it is not reasonably tailored to control access only with respect to the copyrighted component.  This argument is unavailing.  SerpApi cites no authority or statutory language showing that a technological measure must control access only with respect to the copyrighted work and cannot also control access to non-copyrighted content that may accompany the

copyrighted work. SerpApi relies heavily on *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022) ("*hiQ*") for the proposition that Congress did not intend for the DMCA to cover technological measures like SearchGuard, which, according to SerpApi, are designed to prevent the scraping of public websites and are not reasonably tailored to protect copyrighted content. However, *hiQ* is inapposite because it addresses a statute other than the DMCA. *See id.* (analyzing claims under the Computer Fraud and Abuse Act). Other non-binding cases that SerpApi relies upon are inapposite for the same reason.[5] Accordingly, the Court finds that SerpApi has not met its burden to show that Google's claims are subject to dismissal on the basis that SearchGuard is not tailored to control access only with respect to copyrighted components in Google Search results. *See Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim.") (collecting cases).

### b. With the authority of the copyright owner

SerpApi argues that Google's claims under the DMCA fail because it does not allege that it implemented SearchGuard to protect a copyrighted work with the "authority of the copyright owner" as required under 17 U.S.C. § 1201(a)(3)(B). *See* Dkt. No. 22 at 17-18.

The Court agrees. The plain language of 17 U.S.C. § 1201(a)(3)(B) makes clear that, for a technological measure to "effectively control[] access to a work" it must, among other things, "require[] the application of information, or a process or a treatment, *with the authority of the copyright owner*, to gain access to the work." *See* 17 U.S.C. § 1201(a)(3)(B). The Ninth Circuit has interpreted the "with the authority of the copyright owner" element as requiring a plaintiff to allege and later prove that the technological measure in question was implemented and functioned with the authority of the copyright owner. *See Blizzard*, 629 F.3d at 954 (holding that a technological measure named "Warden" effectively controlled access to a copyrighted work in relevant part because its features were "put into place by Blizzard [the copyright owner], and thus,

---

[5] *See, e.g., See X Corp. v. Bright Data Ltd.*, 733 F.Supp.3d 832, 843 (N.D. Cal. 2024) (addressing breach-of-contract and tort claims); *Meta Platforms, Inc. v. Bright Data Ltd.*, 2024 WL 251406, *17 (N.D. Cal. 2024) (addressing claims for breach of contract).

function[ed] 'with the authority of the copyright owner'"). Here, Google does not allege any facts that raise the inference that SearchGuard was implemented and functions to control access to copyrighted components that may be included in Google Search results "with the authority of the copyright owner[s]." Accordingly, Google's claims under the DMCA are subject to dismissal on that basis.

Google's arguments do not compel a different conclusion. It contends that it is not required to allege facts indicating that it had the authority of the copyright owners to implement SearchGuard because the phrase "with the authority of the copyright owner" defines who may circumvent a technological measure to gain access to protected work and does not define who may deploy a technological measure to control access to a protected work. *See* Dkt. No. 31 at 18. This argument is unavailing. Google's authorities interpret a different provision of the DMCA, namely 17 U.S.C. § 1201(a)(3)(A), which defines what it means to "circumvent a technological measure." *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863 (9th Cir. 2017) ("Section 1201(a)(3)(A) exempts from circumvention liability only those whom a copyright owner authorizes to circumvent an access control measure, not those whom a copyright owner authorizes to access the work.") (citation and internal quotation marks omitted); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001) ("[S]ubsection 1201(a)(3)(A) frees an individual to traffic in encryption technology designed or marketed to circumvent an encryption measure if the owner of the material protected by the encryption measure authorizes that circumvention."). These authorities do not address the issue here, which is whether a technological measure must function "with the authority of the copyright owner" in order to "effectively control[] access to a work" under 17 U.S.C. § 1201(a)(3)(B).

Google also contends that, even if the authorization of the copyright owner were required to state a claim for violations of 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2), the Court can infer that the requisite authorization was provided to Google based on its allegations that it licenses copyrighted works for inclusion in the Knowledge Panel. *See* Dkt. No. 31 at 19. This argument does not persuade. Google does not allege any facts regarding the terms of the licensing agreements that govern its use of any of the copyrighted content in the Knowledge Panel.

13

United States District Court
Northern District of California

Accordingly, the Court cannot reasonably infer that such licensing agreements grant Google authorization to deploy technological measures to control access to the copyrighted content at issue. Google's reliance on *Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F.Supp.2d 1201, 1206 (S.D. Cal. 2008) does not persuade. In that case, the court held that it could infer that the copyright owners had provided the requisite authorization to the entity that implemented technological measures to control access to a copyrighted work based on allegations that that entity had contracted with the copyright owners to purchase distribution rights for the copyrighted content. *See id.* ("Because EchoStar contracted and purchased the distribution rights of the programming, it is reasonable to infer that EchoStar also has the authority to control the measures protecting the programming."). Notably, *Echostar* pre-dates *Iqbal*, 556 U.S. at 678. Under *Iqbal's* plausibility standard, Google must, but has not, alleged factual matter that raises the inference that copyright owners authorized the implementation of SearchGuard as a technological measure to control access to copyrighted content. Allegations that Google has licenses to display copyrighted content in the Knowledge Panel are not sufficient, without more, to raise that inference.

Thus, Google's claims under the DMCA are subject to dismissal for failure to allege facts that raise the inference that SearchGuard was implemented and functions to control access to copyrighted works "with the authority of the copyright owner" as required under 17 U.S.C. § 1201(a)(3)(B). The Court **GRANTS** SerpApi's motion to dismiss on that basis, **WITH LEAVE TO AMEND**.

> ### c. Application of information to gain access to the protected work

As noted, a technological measure "effectively controls access" to a protected work if the measure, "in the ordinary course of its operation, *requires the application of information, or a process or a treatment*, with the authority of the copyright owner, *to gain access to the work*." *See* 17 U.S.C. § 1201(a)(3)(B) (emphasis added).

SerpApi argues that SearchGuard does not "effectively control access" to copyrighted content because it does not always require "the application of information" to gain access copyrighted content included in the Knowledge Panel in Google Search results, as that

14

copyrighted content can be accessed outside of google.com without having to go through SearchGuard. *See* Dkt. No. 22 at 19.

This argument fails for two reasons. First, SerpApi has not pointed to any allegations in the complaint or to any other material that the Court can consider for the purpose of resolving the present motion to dismiss indicating that copyrighted components that may be included in Google Search results can be accessed outside of google.com. Accordingly, the Court cannot consider SerpApi's representations about the purported availability of the copyrighted content at issue for the purpose of resolving the present motion to dismiss. Second, the authorities that SerpApi cites for the proposition that Google's claims are subject to dismissal because SearchGuard does not always require the "application of information" to access copyrighted components are distinguishable. In *Lexmark International* and *Blizzard*, the Sixth Circuit and Ninth Circuit held, respectively, that a technological measure did not "effectively control access" to a copyrighted work because the party that implemented the technological measure controlled two different paths that could be used to access the work, but the party deployed the technological measure to restrict access via only one of those paths and not the other. *See Lexmark International*, 387 F.3d at 547; *Blizzard*, 629 F.3d at 953. *Lexmark International* and *Blizzard* are inapposite because SerpApi does not point to any allegations that Google controls multiple paths that could be used to access the copyrighted content displayed in the Knowledge Panel and has deployed SearchGuard to restrict access via one of those paths but not the others.

Accordingly, while Google's claims under the DMCA are subject to dismissal for the reasons discussed in the prior sections of this order, they are not subject to dismissal on the ground that Google does not always require "the application of information" to access copyrighted components included in Google Search results.

### 2. Circumventing a technological measure that effectively controls access to a protected work

To state a claim under 17 U.S.C. § 1201(a)(1)(A), a plaintiff must allege facts indicating that the defendant "circumvent[ed] a technological measure" that effectively controls access to a protected work. *See* 17 U.S.C. § 1201(a)(1)(A). To state a claim under 17 U.S.C. §

15

1201(a)(2)(A), a plaintiff must allege facts indicating that the defendant manufactured, provided, or otherwise trafficked in a service that was primarily designed for the purpose of circumventing a technological measure that effectively controls access to a protected work. To "circumvent a technological measure" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner[.]" 17 U.S.C. § 1201(a)(3)(A).

SerpApi argues that Google's claims are subject to dismissal for the additional and independent reason that its allegations do not raise the inference that SerpApi circumvented SearchGuard. *See* Dkt. No. 22 at 26. To support this argument, SerpApi relies heavily on *hiQ*, 31 F.4th at 1200, which it contends "sets the standard for establishing circumvention 'without authorization' under access control statutes." *See id.*

SerpApi's arguments lack merit for two reasons. First, as discussed above, *hiQ* addresses a statute other than the DMCA. *See* 31 F.4th at 1200 (analyzing claims under the Computer Fraud and Abuse Act). Accordingly, the holdings in that case are irrelevant to the analysis here. Second, Google has alleged facts that raise the inference that SerpApi circumvented SearchGuard by bypassing it or by impairing its ability to detect and block SerpApi's automated queries. For example, Google alleges that SerpApi masks its automated queries to make them appear as if they are coming from human users by misrepresenting the device, software, or location from which the queries are sent. *See* Compl. ¶¶ 23, 31, 32. Additionally, Google alleges that SerpApi enables unauthorized browsers that have not solved the SearchGuard challenge to appear like authorized users to Google by syndicating to them the authorization obtained by a different browser after completing the SearchGuard challenge. *See id.* These allegations are sufficiently analogous to allegations that have been held to be consistent with circumvention in other cases. *See, e.g.*, *Epic Games Inc. v. Araujo*, No. CV 24-10835-KK-JCX, 2025 WL 2019810, at *2 (C.D. Cal. June 24, 2025) (holding that the defendant's devices circumvented a technological measure that controlled access to copyrighted content because they misrepresented their serial numbers to disguise their activities and evade detection by the technological measure); *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV02070, 2000 WL 127311, at *4 (W.D. Wash. Jan. 18, 2000) (same where the

16

United States District Court
Northern District of California

defendant's device made itself appear like an authorized device in order to deceive the technological measure into treating it like an authorized device); *Actuate Corp. v. Int'l Bus. Machines Corp.*, No. C-09-05892 JCS, 2010 WL 1340519, at *9 (N.D. Cal. Apr. 5, 2010) (same where access keys or passwords were distributed without authorization to bypass a technological measure). SerpApi has cited no binding authority that compels a different conclusion.[6]

Accordingly, while Google's claims under the DMCA are subject to dismissal for the reasons discussed in prior sections of this order, they are not subject to dismissal on the ground that Google's allegations do not raise the inference that SerpApi circumvented SearchGuard.

### 3. Additional arguments regarding Google's claim under 17 U.S.C. § 1201(a)(2)

SerpApi argues that Google's claim under 17 U.S.C. § 1201(a)(2) fails for the additional and independent reason that Google does not allege facts indicating that SerpApi "sells" technology that others can use to circumvent SearchGuard. *See* Dkt. No. 22 at 28-29.

This argument is unavailing. The plain language of 17 U.S.C. § 1201(a)(2) makes clear that a plaintiff need not allege that the defendant "sells" technology that can be used to circumvent a technological measure in order to state a claim for a violation of that statute. A plaintiff can state a claim for a violation of 17 U.S.C. § 1201(a)(2) in a variety of ways, including by alleging facts indicating that the defendant manufactures or offers a service that is primarily designed for the purpose of circumventing a technological measure that controls access to a protected work.[7] *See*

---

[6] SerpApi cites *Van Buren v. United States*, 593 U.S. 374, 392 (2021), in its reply for the proposition that Google's allegations do not raise the inference that its service circumvents SearchGuard, but that case is inapposite because it interpreted the Computer Fraud and Abuse Act, not the DMCA.

[7] As noted, under 17 U.S.C. § 1201(a)(2), "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title." *See* 17 U.S.C. § 1201(a)(2). "[O]nly one of the three enumerated conditions must be met in order to find a violation of" 17 U.S.C. § 1201(a)(2). *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1094 (N.D. Cal. 2004).

17 U.S.C. § 1201(a)(2)(A).  Here, consistent with the requirements of 17 U.S.C. § 1201(a)(2)(A), Google's allegations are sufficient to raise the inference that SerpApi manufactures or provides a service that is primarily designed or produced for the purpose of circumventing SearchGuard.  *See, e.g.*, Compl. ¶¶ 8, 30–34.

Accordingly, while Google's claim under 17 U.S.C. § 1201(a)(2) is subject to dismissal for the reasons discussed in prior sections of this order, it is not subject to dismissal for the additional reason that Google has not alleged that SerpApi sells technology that others can use to circumvent SearchGuard.

### MOTION TO STAY DISCOVERY AND RELATED JOINT LETTER BRIEFS

SerpApi moves for an order staying discovery pending the resolution of the present motion to dismiss.  *See* Dkt. No. 27.  Via a joint letter brief, SerpApi also requests a stay of its obligation to respond to Google's first set of requests for documents and interrogatories pending the resolution of its motion for an order staying discovery.  Dkt. No. 30.  Google opposes both.  *See* Dkt. Nos. 29, 30.  Because the Court has resolved SerpApi's motion to dismiss, the Court **DENIES AS MOOT** its motion to stay discovery pending the resolution of that motion.  In light of that ruling, the Court also **DENIES AS MOOT** SerpApi's motion to stay its obligation to respond to Google's first set of discovery requests pending the resolution of its motion to stay.

In the parties' second joint letter brief, Google argues that SerpApi has waived any objections to its first set of requests for documents and interrogatories by failing to respond to them while its motion to stay discovery and its request for an order staying its obligation to respond to those requests were pending.  *See* Dkt. No. 39.  Google requests an order compelling SerpApi to respond to its first set of discovery requests "in full and without objection" within ten days.  *See id.* at 2-3.

The Court **DENIES** Google's request for two reasons.  First, the Court is not persuaded that SerpApi waived its objections to Google's first set of discovery requests by failing to respond to them while its request for an order staying its obligation to respond to those requests was pending.  SerpApi has cited a case, which Google has not distinguished, that holds that a party does not waive its objections to written discovery requests by moving for a timely protective order in lieu

of responding to the requests. *See Nelson v. Cap. One Bank*, 206 F.R.D. 499, 500 (N.D. Cal. 2001) ("It would make little sense to hold that in order to preserve objections to written discovery, the responding party must file written objections rather than moving for a protective order.") (citation and internal quotation marks omitted). Here, the Court interprets SerpApi's request for an order staying its obligation to respond to Google's first set of discovery requests as a request for a protective order under Rule 26(c)(1), because, among other reasons, that request sought an order specifying the terms and timing of discovery. *See* Fed. R. Civ. P. 26(c)(1) (providing that a court may issue an order specifying the terms and timing of discovery in response to a motion for a protective order). Because that request was pending at the time that SerpApi's responses to Google's first set of discovery requests were due, SerpApi did not waive its objections to those requests. *See Nelson*, 206 F.R.D. at 500; *see also* Fed. R. Civ. P. 37(d)(2) (providing, in relevant part, that a failure to serve discovery responses as set forth in Rule 37(d)(1)(A)(ii) "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)").

Second, the Court finds that a stay of discovery pending the filing of an amended complaint and the resolution of any motion to dismiss the same would be appropriate. The Court has dismissed all claims asserted in the complaint because Google's allegations are insufficient to state a claim for violations of the DMCA. While the Court has granted Google leave to amend the complaint, it is not clear whether Google will be able to cure the pleading deficiencies identified in this order. In these circumstances, good cause exists for staying discovery until Google files an amended complaint (if any) and any motion to dismiss the same (if any) has been resolved. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (noting that, where the plaintiffs' allegations fail to state a claim for relief, "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery"). The Court also notes that there is no immediate need for discovery. The Court has granted Google leave to amend in connection with the authorizations that it should have received from copyright owners to deploy SearchGuard to protect copyrighted content included in Google Search results. A stay of discovery will not

United States District Court
Northern District of California

impact Google's ability to amend the complaint with respect to that issue, because information relating to it should already be in its possession, custody, or control.

<div align="center">**CONCLUSION**</div>

For the reasons above, the Court:

(1) **GRANTS, WITHOUT LEAVE TO AMEND**, SerpApi's motion to dismiss Google's claims under 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2) to the extent that they are premised on instances where SearchGuard controls access to Google Search results that do not contain any copyrighted content;

(2) **GRANTS, WITH LEAVE TO AMEND**, SerpApi's motion to dismiss Google's claims under 17 U.S.C. § 1201(a)(1)(A) and 17 U.S.C. § 1201(a)(2) to the extent that they are premised on instances where SearchGuard controls access to Google Search results that contain a copyrighted component;

(3) **DENIES AS MOOT** SerpApi's motion for an order staying discovery pending the resolution of its motion to dismiss, as well as its request for an order staying its obligation to respond to Google's first set of discovery requests pending the resolution of its motion to stay discovery;

(4) **DENIES** Google's request for an order compelling the production of responses to its first set of discovery requests "in full and without objection" within ten days; and

(5) **STAYS** discovery pending the filing of an amended complaint and the resolution of any motion to dismiss the same.

To the extent that it may do so without contradicting the allegations in the complaint, Google may, within twenty-one (21) days of the date of this order, file an amended complaint consistent with the rulings herein. Google shall comply with this Court's standing order on the filing of amended complaints. No new argument may be raised in a subsequent motion to dismiss that could have been raised in the first instance.

This order terminates docket numbers 22, 27, 30, and 39.

<div style="text-align: left; writing-mode: vertical">United States District Court
Northern District of California</div>

**IT IS SO ORDERED.**

Dated:   July 20, 2026

_____

**Hon. YVONNE GONZALEZ ROGERS**
**Chief UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

21